## INTERNATIONAL & G. N. RY. CO. v. MUDD. (No. 5843.)

(Court of Civil Appeals of Texas. San Antonio. April 18, 1917. Rehearing Denied May 16, 1917.)

1. CARRIERS ⊛228(5) — CARRIAGE OF LIVE STOCK—ACTIONS FOR DELAY.

In a shipper's action for damages to a shipment of stock owing to delay and a consequent shrinkage, evidence *held* sufficient to sustain a finding that the carrier was negligent in failing to provide a proper engine to pull the train.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 960.]

2. CONTINUANCE ⊛26(3)—GROUNDS.

Where a continuance is sought on account of the absence of a witness, it will be refused, in the absence of a showing of diligence in attempting to procure such evidence.

[Ed. Note.—For other cases, see Continuance, Cent. Dig. §§ 77, 81, 83.]

3. EVIDENCE ⊛519—EXPERTS—WEIGHT.

In a shipper's action for damages due to a delayed shipment of live stock, the evidence of an expert as to the weight of the cattle was properly admitted.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 2328.]

4. EVIDENCE ⊛491 — TIME — OPINION EVIDENCE.

In a shipper's action for damages due to a delayed shipment of live stock, a witness, qualified as an expert, might testify as to the time it usually took to make the trip between the point of shipment and destination.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 2269.]

Appeal from Frio County Court; S. T. Dowe, Judge.

Action by George H. Mudd against the International & Great Northern Railway Company. Judgment for plaintiff, and defendant appeals. Affirmed.

See, also, 179 S. W. 686.

Cobbs & Cobbs, of San Antonio, and Wilson, Dabney & King, of Houston, for appellant. Magus Smith, of Pearsall, for appellee.

FLY, C. J. This is a suit for damages to a shipment of 50 head of cattle which were delivered by appellee to appellant on February 20, 1912, for transportation from Dilley, Tex., to Ft. Worth, Tex. The negligence alleged was a delay for 20 hours on the way to Ft. Worth, whereby the cattle lost greatly in weight and reached their destination in a bruised and emaciated condition. Appel-

---

lant sought to excuse the delay on the ground that the train containing the cattle was struck by a violent windstorm and cold weather between Dilley and San Antonio, by which the locomotives were chilled and could not maintain sufficient steam to haul the train to San Antonio in the usual time against the strong north wind; that the track was covered with sand, and sand got into the machinery and stalled the locomotive; that the telegraph poles were blown down, and control of the train by wire prevented, causing further delay; that the cattle on account of the delay missed connection at San Antonio, and had to be held over until the next train left for Ft. Worth. Customary shrinkage in weight was also pleaded. The cause was submitted to the court, without a jury, and judgment was rendered in favor of appellee for $600, with interest and costs.

[1] The first assignment of error questions the sufficiency of the evidence to sustain the judgment. We think negligence on the part of appellant was shown by the evidence. The cattle were delivered to appellant, in fine condition, about 10 o'clock on the morning of February 20, 1912. The cattle had been fattened for market, and were put in two cars. They weighed from 1,000 to 1,250 pounds each. The cattle should have reached Ft. Worth on February 21st, but did not reach there until February 22, 1912. They were on the road about 48 hours. The usual run was from 23 to 25 hours. The cattle were in bad condition when they reached Ft. Worth, being scratched and bruised and sold for less than if they had reached the market in good condition. There was a hard wind blowing from the northwest on February 20, 1912, but the delay in reaching San Antonio arose from a leaky engine. The leaking came from running the engine without sufficient water. The engine got in such condition between Dilley and San Antonio that it would not move. If the engine had worked properly, the train would have reached San Antonio before the storm became violent. The train was running behind time before the wind came.

The questions of the measure of damages and the class of cattle are not raised by the assignment, although discussed in an argument following the assignment.

[2] The second assignment of error is overruled. The application for the continuance was made on account of the absence of H. P. Anthony, by whom it was alleged that appellant expected to prove certain matters, followed by the allegation that the witness was dead. Although it is stated in the application that appellant "expects to procure this testimony at the next term of court," it must mean from some other source; otherwise it would disclose an impossibility on its face. It is not, however, intimated that other witnesses will be procured to testify to the facts. No effort had been made to obtain the testimony of the witness by having him present or by taking his deposition. No diligence whatever was shown to procure the testimony. It is not stated that the witness, an employé of appellant, had ever attended any term of the court, although the suit was filed on May 16, 1912, and was tried on May 31, 1916.

[3] The witness, Mudd, showed that he was an expert in estimating the weight of cattle, and his evidence as to the weight of the cattle was properly admitted. Rogers Expert Testimony, p. 267; Railway v. Greathouse, 82 Tex. 104, 17 S. W. 834; Filley v. Billings, 26 Neb. 537, 42 N. W. 713.

[4] E. C. Foster was shown to have been engaged for 20 years in shipping cattle from Pearsall, Cotulla, Laredo, Fowlerton, and Carrizo Springs to St. Louis, St. Joe, Ft. Worth, and Oklahoma, and had made trips with cattle 20 or 25 times. He said he knew how long it usually took to make the trip from Dilley to Ft. Worth, and testified as to the time. The testimony was admissible. The witness qualified as an expert. No objection was urged to the evidence on the ground that the witness was not shown to be an expert, but on the ground that it called for a mixed conclusion of law and fact and was hearsay. We fail to see any question of law in the evidence. It was a question purely of fact, and was not hearsay.

The judgment is supported by law and the facts, and the eleventh assignment of error is overruled.

The judgment is affirmed.